NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK (CBN 149883)
Assistant United States Attorney
Chief, Asset Forfeiture Section
   312 North Spring Street, 14th Floor
   Los Angeles, California 90012
   Telephone:  (213) 894-6166
   Facsimile:  (213) 894-0142
   E-mail: Steven.Welk@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DISTRICT

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 2:20-CV-3568 |
| Plaintiff, | VERIFIED COMPLAINT FOR FORFEITURE |
| v. | [21 U.S.C. § 881(a)(6)] |
| $129,069.00 IN U.S. CURRENCY, | |
| Defendant. | [D.E.A.] |

   The United States of America brings this claim against the defendant $129,069.00 in U.S. currency ("defendant currency"), and alleges as follows:

### JURISDICTION AND VENUE

   1.    This is a civil forfeiture action brought pursuant to 21 U.S.C. § 881(a)(6).

1

2.      This court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3.      Venue lies in this district pursuant to 28 U.S.C. § 1395(b).

<u>PERSONS AND ENTITIES</u>

4.      The plaintiff is the United States of America.

5.      The defendant is $129,069.00 in U.S. currency seized from Jessica Davis ("Davis") on September 17, 2019, during a consensual search at Los Angeles International Airport ("LAX").

6.      The interests of Davis may be adversely affected by these proceedings.

7.      The defendant currency is in the custody of United States Marshals Service, where it shall remain subject to this court's jurisdiction during the pendency of this action.

<u>FACTS SUPPORTING FORFEITURE</u>

<u>Interview of Davis at Philadelphia International Airport</u>

8.      On September 17, 2019, Drug Enforcement Administration ("DEA") agents at Philadelphia International Airport ("PHL") were monitoring passengers when they saw Davis approach the American Airlines ticket counter minutes before a flight was due to leave for Los Angeles, California.  Agents approached Davis, identified themselves as law enforcement officers, and asked if they could speak with Davis.  Davis agreed to speak with the agents.  Davis told agents she was on stand-by flying on a "buddy pass" provided by her cousin, who worked for American Airlines.  When asked if she possessed any contraband, narcotics or large sums of currency, Davis stated that she was carrying approximately $40,000.00.  Agents arranged for a sophisticated drug detecting canine to conduct a narcotic sniff of Davis' backpack and purse.  The canine made a positive alert to the odor of narcotics on Davis' backpack and purse, indicating that the bags and/or their contents had recently been in the presence of a controlled substance.  When

agents asked to conduct a search of Davis' backpack and purse, she stated "do I have to?"  At that point, agents decided to end the interview because they did not want Davis to miss her flight to Los Angeles, which was boarding.

Initial Interview of Davis at LAX

9.      At approximately 12:30 p.m., members of the DEA Los Angeles International Airport Narcotics Task Force ("LAXNTF") received information from DEA agents at PHL that LAX-inbound passenger Davis was carrying approximately $40,000.00 in U.S. currency, and that a drug detecting canine had alerted positively to her backpack and purse.

10.     At approximately 6:50 p.m., LAXNTF members saw Davis exit the jetway carrying her backpack and purse.  Davis was walking slowly and looking around her as she approached the baggage claim area.  She bypassed the baggage carousel, exited the terminal and stood at the curb.  Officers approached Davis and identified themselves as law enforcement officers by displaying their identification.  Officers told Davis she was not in trouble and had not done anything wrong, and asked if she was willing to answer questions related to her travel, to which Davis agreed.

11.     Davis told officers she had traveled from Philadelphia to shop and spend a few days with her cousin in San Diego, California.  She said she traveled on a one-way "buddy pass" provided by her cousin, who worked for American Airlines.  Davis admitted that she did not have hotel or rental car reservations, but intended to rent a car and drive to meet her cousin in San Diego.  She did not know how long she would be staying in San Diego.  When asked how much money was in her possession, Davis stated "a few dollars, about $40,000.00."  When officers asked for consent to search her backpack and purse, Davis agreed.

12.     During the search of Davis' bags, officers observed numerous bundles of U.S. currency in various pockets of clothing inside the backpack, and bundles of currency in compartments in her purse.  Officers asked Davis to accompany them

to their office due to the large amount of currency.  Davis agreed, and carried her own backpack and purse to the office.  While walking to the office, Davis spontaneously stated she was visiting Los Angeles to buy marijuana to smoke, and to purchase pocketbooks.

Office Interview of Davis

13.    At the office, an officer asked Davis for consent again to search her backpack and purse, to which she agreed.   During the search of her backpack, officers found several rubber-banded bundles of U.S. currency inside pockets of several pieces of clothing, along with a bundle of currency in a compartment.  The search of her purse revealed additional bundles of currency within the purse and a side pocket.

14.    When asked how much money she had, Davis said she was carrying approximately $40,000.00, then changed her story and said the amount was closer to $50,000.00.  When officers told her she sounded unsure of the amount of money in her possession, Davis stated she was unsure of the actual amount because her "sugar daddy" gave her money before the trip.  She refused to provide a telephone number for her "sugar daddy" because he is married.  Davis further stated she had planned to travel to San Diego to visit a cousin for a few days, but refused to provide her cousin's name or telephone number.  Davis stated that flights to San Diego were full, so she flew to Los Angeles instead.  She admitted again that she did not have hotel or rental car reservations, but was going to rent a car from Dollar Rent A Car to drive to San Diego.

15.    Davis then admitted that the money had been derived from stripping since the age of seventeen, and from performing "sexual acts" for married men she called "sugar daddies."  She stated that she kept the money under her bed and was unable to produce any pay stubs, bank account or tax records to verify where the money originated.  Davis identified the source of her "buddy pass" as her cousin Jordan Harper, but refused to provide any additional information about Harper.

16.    Officers arranged for a sophisticated drug detecting canine to conduct a narcotic sniff of the money in Davis' backpack and purse.  The canine made a positive alert to the money, indicating that it had recently been in the presence of a controlled substance.

17.    A subsequent count of the money seized from Davis totaled $129,069.00 in U.S. currency, the defendant currency.

Criminal History

18.    A criminal history check of Davis revealed that in June 2004, Davis was arrested for obstructing administration of law, possession of marijuana, manufacturing, distributing or dispensing a controlled substance and distributing, and dispensing or possession of a controlled substance; in October 2007, Davis was convicted of shoplifting; and in June 2016, Davis was arrested for shoplifting, possession of a prohibited weapon or device; disorderly conduct, possession of marijuana and use or possession with intent to use drug paraphernalia.

Prior Seizure and Forfeiture Involving Davis

19.    On August 7, 2018, Davis was a passenger in a rental car registered to Hertz in San Diego, from which $158,635.00 in U.S. currency was seized from Davis and her companion Steven M. Jackson in Los Angeles.  A sophisticated drug detecting canine conducted a narcotic sniff of the two bags inside the vehicle and made a positive alert, indicating that the bags and/or their contents had recently been in the presence of a controlled substance.  Neither Davis nor Jackson submitted claims or petitions for the currency, and the $158,635.00 in U.S. currency was administratively forfeited by the DEA on January 24, 2019.

20.    The facts above are strongly indicative of illegal drug trafficking activity.  Particularly significant are the large amounts of rubber-banded currency hidden in clothes pockets and bag compartments.  The packaging of the money is consistent with common practices of drug money couriers, as is Davis' lack of knowledge of exactly how much money she was carrying, and the fact that Davis

did not have checked luggage, allowing her to quickly exit the terminal and avoid police detection.  Also significant were the evasive and inconsistent explanations given for the source and intended use of the money, the fact that Davis traveled to Los Angeles, a source city for illegal drugs, with secreted bundles of currency; the positive canine alert to the bags containing the defendant currency, indicating that they had been in recent, close proximity to controlled substances; Davis' criminal history of drug possession and distribution of drugs; and the fact that Davis could not provide information for who gave her the money, nor provide additional information on her cousin who she claimed gave her a one-way ticket "buddy pass" to fly to Los Angeles the day before the flight.  Acquiring a one-way ticket at the last minute is a common practice of couriers of narcotics or narcotics-related proceeds.  Additionally, Davis was a passenger in a prior seizure of a large amount of currency, where the facts indicated the currency seized was the proceeds of drug trafficking or was intended to be used in exchange for narcotics.  All of these facts are typical indicators that an individual is transporting proceeds of drug trafficking or money intended to be used in one or more exchanges for a controlled substance.

21.    Based on the above, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal narcotics trafficking, or was intended to be used in one or more exchanges for a controlled substance or listed chemical, in violation of 21 U.S.C. § 841, *et seq.*  The defendant currency is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, plaintiff United States of America prays that:

(a)    due process issue to enforce the forfeiture of the defendant currency;

(b)    due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c)    that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    (d)    for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.


DATED: April 17, 2020        NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

        /s/ Steven R. Welk
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

VERIFICATION

I, Marlon Coronado, hereby declare that:

1.    I am a Task Force Officer with the Drug Enforcement Administration and am familiar with this investigation.

2.    I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents, which I believe to be reliable.

3.    Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed April 14, 2020 in LOS ANGELES        , California.


MARLON CORONADO

8